**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| GEORGE TAGUINES, | ) No. ED CV 11-1315-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 25, 2011, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 9, 2011, and September 21, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 10, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

**II.**

**BACKGROUND**

Plaintiff was born on July 11, 1970. [Administrative Record ("AR") at 53.] He has a twelfth grade education, and past relevant work experience as a security guard and an airport screener. [AR at 141, 156.]

Plaintiff filed an application for Disability Insurance Benefits on November 21, 2007, and an application for Supplemental Security Income payments on December 5, 2007, alleging that he has been unable to work since August 5, 2007, due to cardiomyopathy and congestive heart failure. [AR at 117-21, 122-28, 134-42.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 57-61, 63-67, 71-72.] A hearing was held on October 30, 2009, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 34-48.] A medical expert and a vocational expert ("VE") also testified. [AR at 31-34, 46-51.] On December 17, 2009, the ALJ determined that plaintiff was not disabled. [AR at 14-23.] On July 8, 2011, the Appeals Council denied plaintiff's request for review. [AR at 1-3.] This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since August 5, 2007, the alleged onset date of the disability.[1] [AR at 16.] At step two, the ALJ concluded that plaintiff has the severe impairments of: dilated cardiomyopathy, caused by amphetamine abuse; type II diabetes mellitus; and sensory-neural hearing loss. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 17.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform "medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with limitations.[3] [Id.] Specifically, the ALJ determined that plaintiff can "climb stairs, but not ladders, scaffolds, or ropes." [Id.] The ALJ also determined that plaintiff is limited by the following restrictions: "He cannot work at heights or balance; he cannot operate motorized equipment or work around unprotected machinery; and his work environment should not be excessively noisy -- an office environment is ok." [Id.] At step four, the ALJ concluded that plaintiff is capable of performing his past relevant work as a security guard and an airport screener. [AR

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012. [AR at 16.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   20 C.F.R. §§ 404.1567(c) and 416.967(c) define "medium work" as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." The capacity to perform medium work implicates that one "can also do sedentary and light work."

at 22.] Thus, the ALJ determined that plaintiff has not been disabled at any time from August 5, 2007, through December 17, 2009, the date of the decision. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ improperly discounted plaintiff's credibility; and (2) given the residual functional capacity assessed by the ALJ, plaintiff cannot perform his past work as a security guard and an airport screener. [See Joint Stipulation ("JS") at 3-15.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.  PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends that the ALJ failed to properly consider his testimony and make proper credibility findings. [JS at 9-15.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th

Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff testified, in part, that he tires easily and that he suffers from depression. [AR at 45-46.] He further testified that whether standing or sitting, he feels like his "body is aching," and that he "get[s] tired of [his] life like this." [Id.] In an Exertional Daily Activities Questionnaire completed on December 12, 2007, plaintiff indicated that he could lift less than five pounds. [AR at 152.] In an Exertional Questionnaire plaintiff completed on June 12, 2008, he subsequently indicated that he could lift less than two pounds and that he is weak, fatigued, and constantly dizzy. [AR at 175-76.]

At step one of the two-step credibility analysis, while the ALJ did not explicitly state that he found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ nevertheless concluded that "the allegations of [plaintiff] are not fully credible." [AR at 18, 21.] Thus, it appears that the ALJ implicitly found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the pain or other symptoms plaintiff alleged. At step two, then, as the record contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ found plaintiff less than credible because plaintiff "has a pecuniary interest in the outcome of the hearing or is otherwise motivated by secondary gain." [AR at 19.] The ALJ also appeared to find plaintiff less than credible based on plaintiff's daily activities. [AR at 18.]

As to the first reason, it is improper for an ALJ to determine that a plaintiff's pecuniary interest alone is sufficient to reject a plaintiff's credibility. See Ratto v. Secretary, Dept. of Health

---

[4] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

6

& Human Servs., 839 F.Supp. 1415, 1428 (D.Or. 1993) ("By definition, every claimant who applies for [disability insurance] benefits does so with the knowledge -- and intent -- of pecuniary gain. That is the very purpose of applying for [disability insurance] benefits."). Plaintiff is correct that from the ALJ's reasoning, it follows that every claimant would be found less than credible. See id. at 1429 ("If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible."). Thus, the ALJ's finding that plaintiff had a pecuniary interest in the outcome of his case was not a clear and convincing reason to find plaintiff less than credible.

The ALJ further erred insofar as he discounted plaintiff's credibility because plaintiff "asserts he can walk one-quarter of a mile daily, climb stairs with rest breaks, . . . does not use an assistive device for ambulation," and can "drive and shop for groceries." [AR at 18, 151-53, 174-76.] Generally speaking, if a claimant has the ability to perform activities "that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent [him] from working." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Engaging in some household chores or activities, however, is not necessarily inconsistent with a finding of disability. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (benefits awarded on appeal to a claimant experiencing constant leg and back pain, despite the claimant's ability to cook and wash dishes); see also Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity.").

The Court finds that the ALJ's summary of plaintiff's daily activities mischaracterizes plaintiff's statements regarding those activities. First, the ALJ noted, citing to an Exertional Daily Activities Questionnaire plaintiff completed on December 12, 2007, and an Exertional Questionnaire plaintiff completed on June 12, 2008, that plaintiff "asserts he can walk one-quarter of a mile daily." [AR at 18, 151-53, 174-76.] However, in the same questionnaires, plaintiff also reported that his legs feel "shaky or weak" after walking one-quarter of a mile, and that his tiredness, dizziness, and leg fatigue prevent him from walking more than five meters. [AR at 151, 174.] Next, the ALJ emphasized that plaintiff can "climb stairs with rest breaks" [AR at 18], but

7

plaintiff reported in his questionnaires that he "[can] barely make it to the top" of a 12-step staircase and that he can climb stairs "if necessary." [AR at 152, 175.] Third, the ALJ appeared to rely on the fact that plaintiff "does not use an assistive device for ambulation." [AR at 18.] However, plaintiff reported that he "always [has] shortness of breath just walking a very short distance," and that he can only tolerate walking five meters because of "tiredness, dizziness, and fatigue in [his] legs." [AR at 151, 174.] Given that plaintiff asserts that he suffers from shortness of breath and fatigue in his legs after ambulating for five meters, it is neither clear nor convincing how his failure to use an assistive device for ambulation is inconsistent with plaintiff's statements regarding the severity of his symptoms. See, e.g., LaRose v. Astrue, 2010 WL 4272824, at *7 (C.D. Cal. Oct. 25, 2010) ("[T]he fact that [plaintiff] is not prescribed an assistive device to ambulate is not dispositive" on the issue of whether plaintiff's subjective complaints of back and leg pain, numbness, weakness, and cramping were credible.). Finally, the ALJ noted, citing plaintiff's questionnaires again, that plaintiff "can drive and shop for groceries." [AR at 18.] However, in the December 12, 2007, questionnaire, plaintiff reported that he only shopped for "light stuff." [AR at 152.] In the subsequent June 12, 2008, questionnaire, plaintiff reported that in an emergency, he can drive five blocks at most; he can no longer do his own grocery shopping; and he asks a grocery bagger for help while he shops. [AR at 175.] The ALJ therefore mischaracterized plaintiff's statements regarding plaintiff's daily activities, and the ALJ erred insofar as he relied on those mischaracterizations to find plaintiff less than credible. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

Moreover, the Court is not persuaded that plaintiff's ability to walk five meters without an assistive device, climb stairs when necessary, or drive for five blocks in an emergency supports the ALJ's finding that plaintiff could perform his past relevant work, because those abilities do not necessarily translate into an ability to do activities that are "transferable to a work setting." See Fair, 885 F.2d at 603 (noting that "many home activities are not easily transferable to what may

be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

The ALJ offered no legally adequate reason for discounting plaintiff's credibility. Remand is warranted on this issue.

### B. PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY AND HIS ABILITY TO PERFORM THE JOBS CITED BY THE VOCATIONAL EXPERT

The ALJ's reconsideration of plaintiff's subjective symptom testimony on remand may impact on the second issue plaintiff raises in the Joint Stipulation -- whether the ALJ properly considered plaintiff's testimony in determining plaintiff's RFC limitations. [JS at 9-15.] Should the ALJ's determination of plaintiff's RFC remain unchanged on remand, however, the Court finds that the ALJ did not err in finding that plaintiff would be able to return to his past relevant work as a security guard (as defined in DOT No. 372.667-038), as it is generally performed, for the reasons explained below.

At step four, the ALJ must determine whether plaintiff's RFC allows him to return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); Lester, 81 F.3d at 828 n.5. Plaintiff has the burden of establishing that he cannot "return to his former *type* of work and not just to his former job." Villa v. Heckler, 797 F.2d 794, 798 (9th Cir.1986) (emphasis in original); see also Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990) (citing id.) ("The burden of establishing disability is initially on the claimant, who must prove that [he] is unable to return to [his] former type of work."). However, the ALJ must make findings of fact regarding plaintiff's RFC, the physical and mental demands of plaintiff's past work, and whether plaintiff can return to his past relevant work "either as actually performed or as generally performed in the national economy." Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001)). A claimant is typically the primary source for determining how a job was actually performed. Social Security Ruling[5] 82-62. When determining how a job is

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations,"
(continued...)

9

generally performed, the ALJ can rely on descriptions given by the Dictionary of Occupational Titles ("DOT") or a vocational expert. See SSR 82-62; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

The DOT raises a presumption as to job classification requirements. See Johnson, 60 F.3d at 1435; see also Pinto, 249 F.3d at 845-46 ("[T]he best source for how a job is generally performed is usually the [DOT].") (internal citations omitted). Nevertheless, a claimant is entitled to challenge an ALJ's classification of his past relevant work under the DOT. See Villa, 797 F.2d at 798. The claimant "may overcome the presumption that the Dictionary's entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." Id. Alternatively, the claimant may "undertak[e] the burdensome task" of showing the DOT inaccurately describes the exertional demands of the type of work in question. See id. If the ALJ "incorrectly categorize[s] [a claimant's] occupation under [a DOT] job title . . . , then 'the description applicable to that category is irrelevant to the determination of the exertional capacities required in [his] former occupation.'" Id. (quoting Tingle v. Heckler, 627 F.Supp. 544, 545 (S.D. Miss. 1986)).

Here, based on the VE's testimony, which referenced the VE's Vocational Factors Summary, the ALJ found that plaintiff can perform his past relevant work as a security guard and as an airport screener as those jobs are generally performed. [AR at 48-49, 189.] The Summary referenced the following description from DOT No. 372.667-038 (merchant patroller):

> Patrols assigned territory to protect persons or property: Tours buildings and property of clients, examining doors, windows, and gates to assure they are secured. Inspects premises for such irregularities as signs of intrusion and interruption of utility service. Inspects burglar alarm and fire extinguisher sprinkler systems to ascertain they are set to operate. Stands guard during counting of daily cash receipts. Answers alarms and investigates disturbances . . . . Apprehends unauthorized persons. Writes reports of irregularities. May call headquarters at regular intervals, using telephone or portable radio transmitter. May be armed with pistol and uniformed. May check workers' packages and vehicles entering and leaving the premises.

---

[5](...continued)
and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[AR at 189.] The Summary also referenced DOT No. 372.667-010 (airline security representative), which provides that an airport screener "[p]laces carry-on baggage or other containers onto x-ray device, actuates device controls" or "[m]ay turn on power and make adjustments to equipment."[6] [Id.]

Plaintiff argues that, based on the ALJ's RFC determination for plaintiff, he cannot perform his past work as a security guard or an airport screener, as classified by the ALJ. [JS at 4-9.] Specifically, plaintiff asserts that since the ALJ determined that plaintiff cannot operate motorized equipment, work around unprotected machines, or work in excessively noisy environments [AR at 17], it was improper for the ALJ to conclude that plaintiff can perform these two jobs as generally performed. [JS at 4.] Plaintiff further contends that the ALJ failed to elicit reasonable explanations to account for deviations from the DOT given alleged conflicts between the DOT and the VE's testimony. [JS at 5-7.]

The VE's testimony that an individual with plaintiff's limitations can perform work as a security guard "as is indicated in . . . DOT [No. 372.667-038]" does not appear to conflict with the ALJ's assessment of plaintiff's limitations. [See AR at 49.] In the Work History Report plaintiff completed on December 13, 2007, he stated that his security guard work involved patrolling an area with "continuous walking" and writing reports; he twice indicated that this work involved no use of "machines, tools, or equipment." [AR at 157, 160.] In an undated Disability Report, plaintiff also described his security guard work as "provid[ing] security for a shopping plaza," "chas[ing] shoplifters," and "lift[ing] shoplifters when they did not want to get up." [AR at 136.]

Substantial evidence supports the ALJ's determination that plaintiff's description of his duties as a security guard comport with the merchant patroller job described in DOT No. 372.667-038. First, plaintiff indicated that he provided security for a shopping plaza by patrolling the area, which parallels the elements contained in DOT No. 372.667-038 of "[p]atrol[ling] assigned territory

---

[6] Plaintiff incorrectly asserts that the VE offered no DOT codes for the jobs of security guard and airport screener. [See JS at 4.] Plaintiff is also incorrect in asserting that the ALJ improperly relied on DOT No. 379.367-010 (surveillance-system monitor) to conclude that plaintiff can perform his past relevant work as a security guard. [See id.] As the record makes no indication that the ALJ or VE considered that DOT code, the Court declines to address this contention by plaintiff.

to protect persons or property" and "inspect[ing] premises." [See AR at 136, 157, 160.] In addition, plaintiff stated that his former work involved chasing shoplifters and lifting them up when they resisted arrest. [AR at 136, 157.] The DOT description of the work of merchant patroller also includes duties related to "[a]pprehend[ing] unauthorized persons." DOT No. 372.667-038. Moreover, plaintiff indicated that he was responsible for writing reports, which is comparable to the duty contained in DOT No. 372.667-038 to "[w]rite[] reports of irregularities." [AR at 157, 160.] Finally, plaintiff does not claim that the DOT's description of the work of merchant patroller fails to encompass any of the duties from his work as a security guard. Plaintiff therefore failed to meet his burden of establishing that DOT No. 372.667-038 is an inaccurate classification of his past work as a security guard.

Plaintiff further cites to DOT No. 372.667-034 (security guard), which provides that a security guard "[m]ay be designated Guard, Convoy (any industry) when accompanying or leading truck convoy," as the relevant DOT description of plaintiff's past security guard work. [See JS at 5.] However, plaintiff's own contentions concerning his past work undermine reliance on DOT No. 372.667-034. [See id.] Plaintiff argues that DOT No. 372.667-034 accurately describes his past work and that he cannot perform that work because it involves driving a vehicle, but plaintiff indicated that his past security guard work involved "patrol (continuous walking) up [and] down [a] stairwell" -- not patrolling in a vehicle. [AR at 157.] Moreover, plaintiff twice indicated that his work involved no use of "machines, tools, or equipment." [AR at 157, 160.] In asserting that his past security guard work involved driving a patrol vehicle or truck but simultaneously involved no use of "machines, tools, or equipment," plaintiff has failed to demonstrate that the duties of his former type of work are sufficiently similar to the duties described in DOT No. 372.667-034 so as to render DOT No. 372.667-034 an accurate description. As such, plaintiff has failed to show that DOT No. 372.667-034 is an accurate classification of his past work as a security guard, and has failed to meet his burden of establishing that he is incapable of performing his past work as a merchant patroller, DOT No. 372.667-038, as it is generally performed.

Plaintiff also contends that the ALJ failed to address an "apparent inconsistency" between the VE's testimony and the DOT's description of the work of a security guard. [JS at 5-7.] Insofar

as plaintiff asserts that the ALJ deviated from the DOT by classifying his past type of work as that of a merchant patroller, DOT No. 372.667-038, such an argument relates to the classification of plaintiff's past work, addressed supra, and not any deviation from the DOT.  Moreover, to the extent that plaintiff contends the ALJ deviated from the DOT because the work requirements of DOT No. 372.667-038 conflict with plaintiff's RFC, plaintiff does not identify any specific conflict. Indeed, there is no conflict between DOT No. 372.667-038's classification as light work, and the ALJ's determination that plaintiff can perform medium work with certain limitations, including that he is unable to operate motorized equipment, work around unprotected machines, or work in excessively noisy environments. [See AR at 17.]

The VE's testimony that an individual with plaintiff's limitations can perform work as an airport screener, however, does appear to conflict with the ALJ's assessment of plaintiff's limitations.  [See AR at 49.]  The ALJ failed to ask the VE for an explanation, nor did the VE offer any, as to how an individual with plaintiff's limitations can perform work as an airport screener given that actuating x-ray device controls or adjusting equipment may involve operating motorized equipment, which the ALJ determined plaintiff cannot do.  [See AR at 17.]  It may be that despite his limitations, plaintiff can in fact perform work as an airport screener if the ALJ's preclusion from operating motorized equipment does not encompass the job duties relating to controls and equipment; but the ALJ failed to elicit any explanation from the VE to support such a conclusion. Given the apparent conflict between the DOT's description of the work of an airport screener and the ALJ's determination of plaintiff's RFC, the ALJ erred by failing to inquire further as to that job. See Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (An ALJ may not rely on the testimony of a VE without first asking the VE whether his testimony conflicted with the DOT). Nevertheless, the error was harmless as to the issue of whether plaintiff can perform any of his past relevant work because, as discussed supra, the ALJ properly found that plaintiff retains the capacity to perform his previous work as a security guard.  See Robbins v. Commissioner Soc. Sec. Admin., 648 F.3d 721, 728 (9th Cir. 2011) (An error is harmless where it is "inconsequential to the ultimate nondisability determination.") (quoting Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

Remand is not warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to reconsider plaintiff's subjective symptom testimony. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 6, 2012

*/s/ Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE